32 C.C.P.A. (Patents)

## EGGERSS v. CARPENTER.

### Patent Appeal No. 4974.

Court of Customs and Patent Appeals.

Feb. 7, 1945.

Corbett, Mahoney & Miller, of Columbus, Ohio (Eugene G. Mason, of Washington, D.C., and John J. Mahoney, of Columbus, Ohio, of counsel), for appellant.

Munn, Liddy & Glaccum, of New York City (Orson D. Munn and Daniel H. Kane, both of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of the invention defined by the counts in issue (Nos. 1 and 2) to appellee, Herbert L. Carpenter.

The interference is between appellant's application No. 158,768, filed August 12, 1937, and appellee's application No. 123,-414, filed February 1, 1937.

■ Appellant is the junior party and the burden was upon him to establish priority of invention by a preponderance of the evidence.

The invention in issue relates to a cylindrical fiber board shipping container, particularly to the top portion or upper end of the container and a cover or closure therefor.

Count 1 is sufficiently illustrative of the two counts in issue. It reads:

"1. A container structure comprising a body portion made of fibre board or the like, said body portion being bent inwardly adjacent one and thereof to form an inwardly extending rib and an external groove which are spaced from the end of said body portion, a head for closing said end of said body portion, said head having a portion supported on said rib and a flange extending outwardly into overlapping relation with the end of said body portion, and a split clamping ring which embraces the end of said body portion with its inner portion projecting into the external groove of said body portion and with its outer portion projecting into overlapping relation to the said flange of said barrel head."

It will be observed from the quoted count that the body portion of the container is bent inwardly at its upper end to form "an inwardly extending rib and an external groove which are spaced from the end of said body portion," the head or closure for the container having a "portion supported on said rib and a flange extending outwardly into overlapping rela-

tion with the end of said body portion" and being held in position on top of the container by a split clamping ring. The clamping ring has a portion which fits into the external groove of the body of the container and another portion which overlaps the head or closure.

Considerable evidence was introduced by the parties.

■ Appellant testified that he is the president, treasurer, and general manager of the Container Company, located in Van Wert, Ohio; that he became associated with that company in 1924, at which time it was located in Toledo, Ohio; that sometime thereafter he purchased the Container Company and is now the sole owner thereof; that in 1924 an arrangement was made with the Master Package Corporation of Owen, Wisconsin, whereby that corporation placed some of its equipment in the Container Company's plant ⌄ in Toledo to be used by the latter company in manufacturing a so-called "master" container; that thereafter there was some disagreement between the officers of the two companies and the equipment of the Master Package Corporation was moved from the Container Company's plant; that in the latter part of 1925 he conceived the invention defined by the counts in issue; that in February, 1926, he and the witness John Huefner, a tool and die maker and the superintendent of appellant's company, constructed a container which conformed to the counts in issue; that the container made at that time was made in conformity with a sketch (appellant's Exhibit No. 1); that Exhibit No. 1 was made for the purpose of the interference; that sketches similar to Exhibit No. 1 were made in February, 1926, but they and the containers made in conformity therewith were consumed in a fire which destroyed appellant's plant in February, 1929, which, at that time, was located in Van Wert, Ohio; that the container made in February, 1926, was 13 inches in diameter; that it was tested by placing 50 pounds of sand and lime in it and rolling it down the stairway from the second to the first floor of their building in Toledo; that the tests were satisfactory; and that after the tests were completed the container was wrapped up and placed on a shelf in the storeroom.

Appellant was asked on direct examination how the container made in conformity with his Exhibit No. 1 compared, from a practical standpoint, with other containers

then on the market, and he said he thought at that time that he had developed an idea which was superior to anything then on the market.

Appellant further testified that in the latter part of 1926 he, together with the witness Huefner, made another container similar to the one produced in February of that year, except that it was 17¼ inches in diameter and of greater length. He identified a sketch (appellant's Exhibit No. 3) of the latter container, and stated that the container made in conformity with Exhibit No. 3 was tested and found to be satisfactory, and that, although it was a commercial product, it was put aside "until such time as we had more time, and particularly money." (Exhibit No. 3 was also prepared for the purpose of the interference.)

The next activity by appellant, according to his testimony, was apparently in 1929 and 1930 when other containers were constructed which were similar to the ones hereinbefore referred to except that they were larger, being of greater length and having a diameter of 19½ inches. Appellant testified that there were about 12 of those containers made in November or December, 1929; that the covers therefor were made by the Gifford Metal Specialty Company of Toledo, Ohio, apparently sometime in September, 1930; that the covers were similar to that made for the container constructed in the latter part of 1926 and were in conformity with a sketch (appellant's Exhibit No. 5) which was made for the purpose of the interference; that those containers were tested by so-called "drop tests" and proved to be satisfactory; that two of them were delivered by appellant personally to Thomas S. Eagen, an employee of the Proctor & Gamble Company of Cincinnati, Ohio, sometime in the summer of 1931, but were not accepted by the company because of the cost; that thereafter in 1932 another container (appellant's Exhibit No. 9), 13 inches in diameter, was made in conformity with the sketches, Exhibits Nos. 1 and 3; that containers similar to Exhibit No. 9 were tested and proved to be satisfactory; that the tests demonstrated that those containers were the best commercial product that had yet been produced; that all of those containers, except Exhibit No. 9, were destroyed, because as stated by appellant, "They had no more value to us"; that from 1932 to 1935 the Container Company was attempting to produce dies for appellant's containers; that containers were made in July or August, 1935, but that covers for them were not finished before February or March, 1936; that the containers made in 1935 were tested and proved to be satisfactory; that they were offered for sale in the summer of 1936; and that commercial production was started in August or September, 1937.

Appellant further testified that from July 11, 1930, to June 5, 1937, he filed seven applications for patents for improvements in containers and received patents therefor. Two of those applications were filed July 1, 1930, two, May 1, 1931, one, July 7, 1931, one, December 12, 1935, and one, June 5, 1937. None of those patents, which are in evidence as appellee's Exhibits Nos. 1 to 7, inclusive, discloses the invention defined by the counts in issue.

Appellant further testified that he was financially unable to produce containers commercially conforming to the counts in issue prior to 1937. However, there is no explanation of why he waited from February, 1926, his alleged date of constructive reduction to practice, until the time of the filing of his involved application (August 12, 1937) to file an application for patent for the invention defined by the counts in issue.

Appellant's witness John Huefner testified that he was a tool and die maker and the superintendent of the Container Company's plant; that he had been with that company and its predecessor since 1916; and that in the latter part of 1924 and the fore part of 1925 appellant disclosed to him his idea of a new container. His testimony in that regard is as follows:

"Q. 31. What did he tell you when he showed you this; how did he explain it? A. Well, he explained the idea that he had about this rib towards the inside with a groove on the out, and the upright flange there.

"Q. 32. In the other words—go ahead, go ahead. A. Well, and the idea was to fit the bottom of the cover onto this rib on the inside, as well as to hold the flange of the—the extended flange over the top towards—above the groove; the flange of the cover was to go over the outside of it.

"Q. 33. When he first came to you with this idea for making this new container did he show you any rough sketches or

drawings of any kind? A. Yes, there were a number of them."

The witness Huefner further testified that he made a 13 inch container in the latter part of 1925 or the fore part of 1926; that the work was done after working hours in the Container Company's plant in Toledo because, the witness stated, appellant did not want the representatives of the Master Package Corporation to learn of his new container. He was shown a sketch (appellant's Exhibit No. 1) and asked to describe the 13 inch container made by him. He described it as follows: "It was made out of a fibre cylinder, with this rib put towards the inside walls and the groove on the out, and this upstanding flange there." He stated that the container had a cover which he described as follows: Well, that was a fibre disk, just a round disk with this metal flange formed up so that it would—the disk was clamped into that and extended part over the outside of that upright flange there." With reference to the locking ring, the witness said: "That was just a U-shaped affair that just went around the cover and fit into that groove in the body of the drum. * * * It was held with a piece of baling wire twisted up." The witness then stated that the sketch (Exhibit No. 1) correctly illustrated the container made in 1926; that that container was tested and proved to be satisfactory; that in the latter part of 1926 another container was made; that it differed from the first container in that it was of greater length and had a diameter of 17¼ inches; that it had a cover which was a "Stapak cover revamped to suit this job"; and that the container had a "U-locking ring" which was held in place by a wire. The witness was shown a sketch (appellant's Exhibit No. 3) which he said "just about illustrates what I made."

The witness further testified that the Container Company moved its plant to Van Wert, Ohio, in 1928; that the plant was destroyed by fire in February, 1929; that the containers made by him in 1926 were on a shelf in the plant and were consumed by fire; that in 1929 he made containers having a diameter of 19½ inches; that they were the same type as shown in the sketch (Exhibit No. 3); and that covers for those containers were made in Toledo in 1930 by some concern whose name he did not mention. The witness did not describe the covers for the drums,

except to say that they had a locking ring of the type shown in appellant's Exhibit No. 3.

With reference to appellant's Exhibit No. 9, which is a container having an inwardly extending rib and an external groove at the upper end thereof, the witness stated that it, together with others like it, was made in 1929. (It will be recalled that appellant Eggerss testified that Exhibit No. 9 was made in 1932.) The witness stated that he had taken Exhibit No. 9 from the factory to his home and used it for wastepaper; that it had been in his home until it was delivered to appellant prior to the submission of evidence in this interference; and that it had no cover at the time it was taken from the factory or at the time it was delivered to appellant.

Although appellant testified that all of the containers like Exhibit No. 9 were destroyed, because, as hereinbefore noted, they were no longer of value to them, he stated that the cover that is now on Exhibit 9 was one of the original covers.

The witness Huefner further testified that he had nothing more to do with containers after 1929, and that he knew nothing about other containers made in appellant's factory after that year, although he continued as superintendent of the Container Company's plant. It is apparent from his testimony that he had no recollection of just what occurred relative to the development of containers after the year 1929. When asked how he could remember so distinctly what occurred in 1925, 1926, and 1929 he stated that he recalled those dates because of the fact that the Master Package Corporation moved some of its equipment into the Container Company's plant in 1924 and moved it out in the latter part of 1926. Just how that would aid his memory as to what occurred in 1929 is not clear.

Appellant's evidence in this interference was submitted March 19 and 20, 1941, approximately 15 years after the alleged disclosure by appellant to the witness Huefner of his conception of the new container and of the making of the containers in the early part of 1926 and the latter part of that year, and approximately 11 years after the witness claimed to have made Exhibit No. 9 and other containers like it.

Appellant's witness Alvern C. Wolf, a tool and die maker for appellant's company, testified that he went to work for that

company sometime in 1929 and remained in its employ until October, 1935, and that he again went to work for the company in March, 1938. He stated that he saw containers in the company's plant in 1929, and that he saw Mr. Huefner working on one of them. He described the container as follows: "it was a fibre drum, fibre sidewall and fibre bottom and a metal band around the bottom and top. The top had an internal bead with an external groove and an upstanding flange," and stated that it was 19½ inches in diameter; that it had no cover at that time; that a cover was made for it later; that between June, 1931, and the latter part of that year he made experimental dies for a container having a diameter of 13 inches; that containers, including Exhibit No. 9, were made from those dies in the year 1932; and that a cover was made for Exhibit No. 9 of the type which now appears thereon. In describing the cover, the witness stated that it had "a split clamping ring * * * that extended up over the edge and down into the external groove," and that it was locked on by a wire. The witness further stated that drums like Exhibit No. 9 were tested and found to be satisfactory; that the latter part of 1932 he started to work on drawings for commercial dies, that is, dies to be used for commercial production of the containers; and that drawings for commercial dies (appellant's Exhibit No. 14-1, 2, 3, 4, 5, 6), were completed by the witness in the latter part of 1934. The witness stated that he made dies in conformity with those drawings and completed them in June, 1935; that those dies were tried out and it was decided to change them; and that he had not finished the improved dies at the time he left the employ of the company in October, 1935, but that they were completed sometime thereafter because they were being used when he returned to the company in March, 1938. Just when they were completed does not appear, except from the testimony of appellant who stated that they were completed sometime in 1936.

According to appellant's testimony, the reason the commercial dies made by the witness Wolf were changed was because the design of the cover for the containers was changed.

The witness Wolf did not testify that the head or closure for the containers, referred to in his testimony, had a portion which was supported on the inwardly extending rib of the container as called for by the counts in issue.

Appellant's witness Paul Kreischer testified that he saw the witness Huefner working on a container having a diameter of 19½ inches in 1929; that a cover for that container was made in 1930 by some other company; that the container had an inner bead and an inverted groove and an upstanding flange; that he saw a container similar to appellant's Exhibit No. 9 which, he stated, was completed in 1932; and that the container had a head or cover which was one of the standard covers reformed to fit that "particular job." He did not corroborate appellant's testimony in any other respect.

Appellant's witness Thomas Thompson, employed by Charles Pfizer & Company, manufacturing chemists, testified that he saw a container in the Container Company's plant in March, 1936. He made a sketch of the container which was introduced in evidence as appellant's Exhibit No. 25-B. He stated that when he saw the container in March, 1936, the cover was on it and locked. He further stated that his company purchased 50 containers from the Container Company which were delivered sometime in October, 1936, but that as his company was not interested in the locking rims the containers delivered to it did not have them. Apparently the containers delivered to his company had covers. However, the witness did not testify that a portion of the cover rested on the inwardly extending rib as called for by the counts in issue.

Appellant's witness Francis X. Hogan of New York City, sales manager for the Container Company, stated that he saw a container in that company's plant at Van Wert, Ohio, in the fall of 1935.

It does not appear from the testimony of the witness Hogan that the head of the container was supported on the inwardly extending rib, and, so far as his testimony is concerned, the head of the container might have been entirely supported by the flange on the top of the container.

Appellant's witness Richard W. Lahey, employed by the American Cyanamid Company, stated that he saw a container in the Container Company's plant at Van Wert, Ohio, in March, 1935, and also in its New York office in March, 1936. After describing each of those containers as having an inwardly extending rib, an external groove, and a cover therefor, the wit-

ness stated that he knew that the containers had an internal rib on the sidewall, but that he did not examine them to ascertain whether the cover was $\frac{1}{16}$ of an inch away from the rib or whether it was supported by the rib.

Appellant's witness Thomas S. Eagen, employed by the Proctor & Gamble Company and in charge of containers used by that company, testified that he saw one of appellant's containers in 1930, and that appellant delivered two containers to the Proctor & Gamble Company sometime in the summer of 1931. He was unable to state how the covers for the containers were constructed.

In his decision, the Examiner of Interferences considered the evidence introduced by appellant in considerable detail, and concluded that the testimony of appellant's witnesses was insufficient to corroborate appellant's testimony that a container conforming to the counts in issue was either conceived or constructed by appellant prior to the filing date of his application, and that it was unnecessary, therefore, to consider the evidence introduced by appellee.

The Board of Appeals also considered the evidence introduced by appellant and concurred in the views expressed by the Examiner of Interferences that appellant had failed to establish conception of the invention or reduction of it to practice prior to his filing date (August 12, 1937).

The invention in issue is a very narrow one, the counts requiring that the head or closure for the container have a portion which is supported on an inwardly extending rib. None of appellant's witnesses corroborated appellant's testimony that the head or closure for the container was supported on an inwardly extending rib.

As hereinbefore noted, the witness Huefner testified from memory approximately 15 years after the alleged disclosure to him by appellant and the construction of containers by the witness in 1926, and approximately 11 years after his alleged construction of a container in 1929. Furthermore, his testimony was given with appellant's sketches (Exhibits Nos. 1 and 3) before him. It will be recalled that those sketches were made for the purpose of the interference.

The witness Wolf also testified from memory as to the work he stated he did in 1931 and 1932, approximately 9 years prior to the submission of his testimony.

Considering the evidence submitted by appellant in the light of his claim that he conceived the involved invention in 1925 and successfully reduced it to practice in 1926, 1929, 1932, 1935, and 1936 and his failure to file an application for patent until August 12, 1937, which delay is not explained, and considering the fact that from July 11, 1930, to June 5, 1937, he filed seven applications for patents for improvements in containers and received patents therefor, we are unable to hold that he has established either conception of the invention or reduction of it to practice prior to the filing date of his involved application (August 12, 1937).

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.